1

2

3

4                          UNITED STATES DISTRICT COURT

5                               DISTRICT OF NEVADA

6                                      * * *

7    BRANCH BANKING AND TRUST                    Case No. 2:14-CV-939 JCM
     COMPANY,
8                                                            ORDER
                                  Plaintiff(s),
9
10            v.

     R & S ST. ROSE LENDERS LLC,
11
                                  Defendant(s).
12

13

14          Presently before the court is the bankruptcy appeal of *Branch Banking and Trust Co. v.*

15   *R&S St. Rose Lenders, LLC*, case number 2:14-cv-00939-JCM.  Appellant Branch Banking and

16   Trust Company ("appellant") filed an opening brief.  (Doc. # 8).  Appellee R&S St. Rose

17   Lenders, LLC ("appellee") filed an answering brief in opposition, (doc. # 9), and appellant filed

18   a reply brief, (doc. # 12).

19   **I.    Background**

20          R&S St. Rose, LLC ("R&S") and R&S St. Rose Lenders ("R&S Lenders") were both

21   formed in 2005 by Forouzan, Inc. and RPN LLC, which are owned by Saiid Forouzan Rad and

22   R. Phillip Nourafchan.  (Doc. # 8-33).  R&S Lenders was established to help R&S finance the

23   purchase of certain real property ("the property").  (Doc. # 8-33).

24          Branch Banking and Trust Company ("BB&T") is the successor-in-interest to Colonial

25   Bank and Commonwealth Land Title Insurance Company ("Commonwealth").  (Doc. # 8-33).

26   R&S obtained a $29 million dollar loan from Colonial Bank to finance the purchase of the

27   property, and the FDIC later assigned this loan to BB&T.  The loan was secured by a first deed

28   of trust on the property, which was recorded on August 26, 2005.

**James C. Mahan**
**U.S. District Judge**

1
2
3

R&S later signed a promissory note to borrow $12 million[1] from R&S Lenders for additional funding to purchase the property.  R&S Lenders recorded a second deed of trust on the property on September 16, 2005.

4
5
6
7
8

In July 2009, Colonial Bank sued R&S and R&S Lenders in state court asserting priority of its first deed of trust.  BB&T was later substituted into the action after the FDIC closed Colonial Bank and transferred its loan to BB&T.  (Doc. # 8).  BB&T asserted claims for contractual subrogation, equitable subrogation, replacement, equitable and promissory estoppel, unjust enrichment, misrepresentation, and civil conspiracy.  (Doc. # 8).

9
10
11
12

After a ten-day bench trial, the state court ruled against BB&T and dismissed its claims, holding that BB&T produced inadequate proof that it was Colonial Bank's successor-in-interest. (Docs. # 8, 9).  In doing so, the state court adjudicated BB&T's priority claims with regard to R&S Lenders' promissory note.  (Doc. # 8).

13
14
15
16

By 2009, R&S was in default on its loan from Colonial Bank.  (Doc. #8-33).  On April 4, 2011, R&S and R&S Lenders both voluntarily filed for chapter 11 bankruptcy.  On August 2, 2011, R&S Lenders filed proof of claim number 12 ("the POC") in R&S's bankruptcy case, asserting a secured claim for $12 million based on its promissory note.  (Doc. # 8-4).

17
18
19
20
21
22

On September 24, 2013, BB&T filed an objection to the POC, arguing for disallowance of the claim on two grounds.  BB&T argued first, that the amount of the claim was inflated, and second, that there was a lack of consideration for the debt.  (Doc. # 8-19).  In its response, R&S Lenders argued that BB&T's objection should fail because (1) the state court had already litigated the amount of the claim, invoking collateral estoppel principles, and (2) BB&T failed to rebut the prima facie validity of the POC.  (Doc. # 8-26).

23
24
25

Meanwhile, BB&T sought to appeal the state court decision on its claims against R&S and R&S Lenders.  (Doc. # 8).  The bankruptcy court modified the automatic stay in R&S's

26
27
28

[1] The parties' briefs and prior court rulings in this case are inconsistent in referencing this amount as either $12 million or $12,300,000.  R&S Lenders' proof of claim asserts a secured claim for $12 million.  Accordingly, the court will reference this amount as $12 million, although certain cited portions of prior rulings in the case refer to the amount as $12,300,000.

James C. Mahan
U.S. District Judge

- 2 -

bankruptcy to allow BB&T to appeal the decision.  On February 14, 2014, the Nevada Supreme Court affirmed the trial court's ruling.  (Doc. # 8-26).

On June 3, 2014, the bankruptcy court overruled BB&T's objection to the POC, holding that "BB&T may not relitigate that Lenders loaned $12,300,000 to the Debtor in September 2005," because "[t]hat factual and legal issue was determined by the State Court and affirmed by the Nevada Supreme Court."  (Doc. # 8-34).  The court further held that BB&T did not produce sufficient evidence to rebut the prima facie validity of the POC.  (Doc. # 8-34).  BB&T appealed the bankruptcy court order to this court.  (Doc. # 1).

The instant appeal raises two issues: (1) whether the bankruptcy court erred by applying issue preclusion to bar BB&T from disputing the amount of R&S Lenders' proof of claim; and (2) whether the bankruptcy court erred by finding that BB&T did not overcome the prima facie validity of R&S Lenders' proof of claim.

**II.    Legal Standard**

Under title 28 U.S.C. section 158(a), a district court has jurisdiction to hear appeals "from final judgments, orders and decrees . . . of bankruptcy judges." 28 U.S.C. § 158(a); *In re Rains*, 428 F.3d 893, 900 (9th Cir. 2005).  The district court reviews a bankruptcy court's conclusions of law *de novo*.  *In re Greene*, 583 F.3d 614, 618 (9th Cir. 2009).

Further, the district court reviews the bankruptcy court's findings of fact for clear error.  *Id.*  The court must accept the bankruptcy court's findings of fact "unless, upon review, the court is left with the definite and firm conviction that a mistake has been committed by the bankruptcy judge."  *Id.*  Finally, the bankruptcy court's evidentiary rulings are reviewed for abuse of discretion.  *In re Kim*, 130 F.3d 863, 865 (9th Cir. 1997).

*A.  Issue preclusion*

In evaluating issue preclusion, a bankruptcy court must apply the law of the state rendering the alleged preclusive judgment.  *In re Cantrell*, 329 F.3d 1119, 1123 (9th Cir. 2003). In Nevada, collateral estoppel requires that four factors are met: "(1) the issue decided in the prior litigation must be identical to the issue presented in the current action; (2) the initial ruling must have been on the merits and have become final; . . . (3) the party against whom the

judgment is asserted must have been a party or in privity with a party to the prior litigation; and (4) the issue was actually and necessary litigated." *Five Star Capital Corp. v. Ruby*, 194 P.3d 709, 713 (Nev. 2008) (internal citation and quotation marks omitted). The party invoking issue preclusion has the burden of proving an earlier judgment's preclusive effect. *Bower v. Harrah's Laughlin, Inc.*, 215 P.3d 709, 718 (Nev. 2009).

Whether a previously litigated issue is identical depends on whether (1) there is a substantial overlap in evidence, (2) the same rule of law applies, (3) the pre-trial and discovery in the prior litigation could have anticipated and embraced the issue as presented in the current litigation, and (4) the claims in each case are closely related. *Resolution Trust Corp. v. Keating*, 186 F.3d 1110, 1116 (9th Cir. 1999). "To give preclusive effect to an issue, it must be clear that the issue was actually adjudicated." *Univ. of Nevada v. Tarkanian*, 879 P.2d 1180, 1191 (Nev. 1994).

"Whether the issue was actually litigated turns on whether the common issue was necessary to the judgment in the earlier suit." *Frei ex rel. Litem v. Goodsell*, 305 P.3d 70, 72 (Nev. 2013). In Nevada, an issue is not "actually litigated" if resolution of the issue is not included in findings of fact supported by evidence. *See In re Sandoval*, 232 P.3d 422, 424-25 (Nev. 2010); *see also* Restatement (Second) of Judgments § 27 cmt. d (1982) ("When an issue is properly raised . . . and is submitted for determination, . . . the issue is actually litigated . . . .").

### B. Prima facie validity

A proof of claim executed and filed in accordance with the bankruptcy rules of procedure constitutes prima facie evidence of the claim's validity and amount. Fed. Bank. R. P. 3001(f). A proof of claim is accepted unless a party in interest objects. 11 U.S.C. § 502(a). Any dispute over the validity of a proof of claim is governed by state law. *In re Johnson*, 756 F.2d 738, 741 (9th Cir. 1985).

A party objecting to a proof of claim has the burden to "produce evidence and show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." *In re Holm*, 931 F.2d 620, 623 (9th Cir. 1991). A proof of claim is "strong

James C. Mahan
U.S. District Judge

- 4 -

1    enough to carry over a mere formal objection without more." *Id.* (emphasis omitted).  However,

2    the claimant retains the ultimate burden of persuasion.  *Id.*

3    **III.    Discussion**

4          This court has jurisdiction over the instant appeal because it is taken from a final order

5    issued by the bankruptcy judge overruling appellant's objection to appellee's proof of claim.  *See*

6    *Lundell v. Anchor Const. Specialists, Inc.*, 223 F.3d 1035, 1038 (9th Cir. 2000).

7          *A.  Issue preclusion*

8          BB&T claims that the bankruptcy court erred by improperly adopting findings from the

9    Nevada district court proceeding to establish that R&S Lenders loaned $12 million to R&S.  It

10   contends that the state court action litigated only the priority dispute and thus the bankruptcy

11   court erred by applying issue preclusion regarding the amount of the alleged loan.  It argues that

12   the bankruptcy court should not have relied on the state court decision "without looking beyond

13   the findings of fact to determine what was actually and necessarily litigated."  (Doc. # 12).

14         R&S Lenders responds that the current issue involves whether it loaned $12 million to

15   R&S.  (Doc. # 9).   It argues that because all of the claims in the state court action centered on its

16   deed of trust, "the validity of the loan memorialized in the Promissory Note had to have been

17   litigated . . . ." (Doc. # 9).  However, this does not address appellant's contention that the *amount*

18   of the deed of trust was not actually litigated by the state court.

19         Pursuant to the standard above, issue preclusion applies only where an issue in a prior

20   case was "actually and necessarily litigated," meaning that it was "necessary to the judgment in

21   the earlier suit."  *Five Star*, 194 P.3d at 713; *Goodsell*, 305 P.3d at 72.

22         Notably, the trial court's order includes a finding of fact that "R&S also borrowed

23   $12,300,000 from St. Rose Lenders."  (Doc. # 8-26).  Further, the order states that the trial

24   court's findings of fact are "[b]ased upon the testimony and documentary evidence presented

25   during the hearing."  (Doc. # 8-26).  The court also referenced the document and book numbers

26   of the deed of trust in the county official records.  (Doc. # 8-26).

27   . . .

28   . . .

**James C. Mahan**
**U.S. District Judge**

- 5 -

1    However, the state court decided only issues of lien priority and assignment.  (Doc. # 8-

2    26).  While the trial court's findings of fact include references to the $12 million promissory

3    note, this issue was not "actually and necessarily litigated."   The trial court's order does not

4    discuss the amount or the evidence supporting its validity.   The court itself stated that it was

5    entering its findings of fact "with the intention of resolving evidentiary issues pertaining to

6    priority of liens found upon the real property at issue . . . ."  (Doc. # 8-26).

7    Additionally, bankruptcy proceedings allow parties lacking privity with a loan to object

8    to the amount of a loan in an alleged claim.  *See* 11 U.S.C. § 502(a).  By contrast, the state

9    court's finding that BB&T lacked privity with the loan from Colonial Bank to R&S led to

10   dismissal of BB&T's claims, precluding any objections to R&S Lenders's claim.  As a result,

11   R&S Lenders has also failed to show that "the prior litigation could have . . . embraced the issue

12   as presented in the current litigation."  *Keating*, 186 F.3d at 1116.

13   The evidence before the court does not make it "clear that the issue was actually

14   adjudicated."  *Tarkanian*, 879 P.2d at 1191.  R&S Lenders, in seeking to invoke issue preclusion,

15   has the burden of proving the state court's preclusive effect.  *Bower*, 215 P.3d at 718.  Appellee

16   has not met this standard here.

17   Therefore, the court finds that the issue of the amount of R&S Lenders' proof of claim

18   was not necessarily litigated in the state court action.  Accordingly, the bankruptcy court should

19   not have applied collateral estoppel and should have allowed appellant to litigate the issue.

20   *B.  Prima facie validity*

21   BB&T also argues that the bankruptcy court erred by finding that BB&T had not offered

22   sufficient evidence to overcome the prima facie validity of the POC.  BB&T argues that because

23   the promissory note merely states that it was provided "for value received," R&S Lenders had a

24   duty to present extrinsic evidence of its promissory note to prove that actual consideration was

25   paid.  (Doc. # 12).   BB&T claims that R&S Lenders' evidence that it exchanged individual

26   investors' money for the promissory note is insufficient.  (Doc. # 12).

27   . . .

28   . . .

**James C. Mahan**
**U.S. District Judge**

- 6 -

1    R&S Lenders responds that the bankruptcy court did not commit clear error in this

2    regard.  (Doc. # 9).  It states that it attached the promissory note showing the $12 million secured

3    obligation to the filed proof of claim.  It also notes that it provided documentation of its deed of

4    trust securing the promissory note and evidencing the $12 million sum owed.  (Doc. # 9).

5    While R&S Lenders possesses the ultimate burden of persuasion, the court cannot find

6    that BB&T has met its burden to "produce evidence and show facts tending to defeat the claim . .

7    . ." *See In re Holm*, 931 F.2d at 623.  The bankruptcy court considered BB&T's evidence

8    attempting to refute the validity of the POC and rejected it.  (Doc. # 8-34).  BB&T has not

9    produced any additional evidence to lead the court to a different result.  As such, the court will

10   affirm the bankruptcy court's ruling with regard to the prima facie validity of the proof of claim

11   at issue.

12   **IV.    Conclusion**

13   Accordingly,

14   IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the ruling of the

15   bankruptcy court in *Branch Banking and Trust Co. v. R&S St. Rose Lenders, LLC*, case number

16   2:14-cv-00939-JCM be, and the same hereby is, AFFIRMED in part and REVERSED in part,

17   consistent with the foregoing.

18   IT IS FURTHER ORDERED that this matter is hereby REMANDED to the bankruptcy

19   court for further proceedings consistent with this opinion.

20   DATED October 1, 2014.

21

22   UNITED STATES DISTRICT JUDGE

23

24

25

26

27

28

**James C. Mahan**
**U.S. District Judge**